**STRUTHERS WELLS CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 83–3026.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1983.

Decided Nov. 18, 1983.

John L. Laubach, Jr. (argued), Clark, Laubach, Fulton, Ravis & Semple, Pittsburgh, Pa., for petitioner.

Joseph A. Oertel, Atty. (argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen,

Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before ALDISERT and BECKER, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This petition for review and cross-application for enforcement of a decision and order of the National Labor Relations Board presents three questions. First, whether substantial evidence supports the Board's determination that Struthers Wells Corporation engaged in bad faith bargaining in violation of § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), and (5), by several proposals made during the course of negotiating a new contract with Local 186 of the Office and Professional Employees International Union. Second, whether the Board erred in determining that a two day strike by employees was an unfair labor practice strike, thereby concluding that the company's refusal to reinstate striking employees was a violation of § 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1), and (3). Third, whether the company violated § 8(a)(1) and (5) of the Act by discontinuing cost-of-living wage adjustments after the expiration of the collective bargaining agreement. We agree with the Board that the employees engaged in an unfair labor practice strike and hence, the company violated § 8(a)(1), (3), and (5) of the Act by its attempts to take advantage of the strike through both its refusal to reinstate the striking employees and its insistence on a clause protecting the unlawfully retained replacements. We disagree, however, that the company engaged in bad faith bargaining prior to the strike and that the discontinuation of the cost-of-living wage adjustments was an unfair labor practice. Therefore, the petition for review and cross-application for enforcement are granted in part and denied in part.

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## I.

In 1980, the Struthers Wells Corporation engaged in collective bargaining negotiations with Local 186 of the Office and Professional Employees International Union which represented a bargaining unit of clerical employees at the company's Warren, Pennsylvania facility. Just prior to its negotiations with the clerical union, the company had successfully completed negotiating new contracts with two other unions in Warren, one representing technical employees and the other, production and maintenance employees. During its negotiations with the company, the clerical union stressed that it was only seeking parity with what the technical union had received in the preceding negotiations. Unlike the two other sets of negotiations, however, the clerical union and company were unable to reach agreement. The prior contract between the two, entered into in 1977, expired on November 1, 1980 and it is the failed attempts to negotiate a new contract that form the basis for this petition.

The company put forth its initial set of proposals when negotiations for a new contract began on October 17, 1980. The company proposed that it would not delete the cost-of-living wage adjustment provision from the contract. It also offered seventeen pages of proposals on other matters. One of these proposals was to replace the merit review clause of the 1977 contract with a clause placing review in management's "sole discretion." A second proposal sought deletion of the posting and bidding procedures from the new contract. The technical union had previously agreed to both of these modifications. The company also proposed eliminating the work jurisdiction clause, which provided that non-bargaining unit members would not perform work normally or customarily assigned to the employees belonging to the clerical union. Both the union and the company agreed that non-bargaining unit employees

were currently performing bargaining unit work. The union objected to the company's proposals and, after several negotiating sessions, no agreement was reached.

The employees held a strike vote meeting on October 29 at which they voted to reject the company's final bargaining proposal. The union representative suggested to the employees that they also vote to authorize the calling of a strike to protest the company's bad faith bargaining in the course of the 1980 negotiations and the failure to remedy a prior unfair labor practice. A majority of the employees voted in favor of a strike to be called at a time to be set by the strike committee.

The union and the company met again in early November and discussed changes to the work jurisdiction clause. The company withdrew its proposal to eliminate the clause and instead proposed replacing it with a clause recognizing that some work was performed by both bargaining unit and non-bargaining unit personnel and stating the company's intent not to expand that overlap substantially. The union offered to make language changes but no final agreement was reached.

On November 5 and 6, the employees engaged in a strike and, on November 7, unconditionally offered to return to work. The company refused to reinstate four of the striking employees, stating that they had been permanently replaced.

At the next negotiating session, the company attempted to hand the union a proposal replacing the union shop clause of the 1977 contract with a maintenance of membership clause. The latter clause, unlike the union shop clause, does not make union membership mandatory. When the employees refused to accept it, it was mailed to them the next day. The company's sole purpose in seeking this change was to bene-

fit the replacements it had hired during the strike by not requiring them to join the union. There were no other meetings between the union and the company during the time period relevant here.

Although the company did not propose initially to remove the cost-of-living wage adjustment (COLA) provisions from the new agreement following expiration of the old contract, it attempted to meet with the union in December 1980 to discuss future cost-of-living adjustments. The union declined the offer whereupon the company discontinued the granting of the adjustments.

The union filed unfair labor practice charges, alleging that the company was engaging in bad faith bargaining and that it unlawfully refused to reinstate the four striking employees. The complaint was amended to allege further that the company violated § 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), and (5), by "cancelling" the "scheduled" wage adjustments.

After a three day hearing, the Administrative Law Judge concluded that the company's proposals on merit reviews, posting and bidding procedures, work jurisdiction and the union shop clause were evidence of bad faith bargaining in violation of § 8(a)(1) and (5) of the Act.[1] The ALJ further found that the two day strike was an unfair labor practice strike, and therefore, by refusing to reinstate four of the striking employees, the company violated § 8(a)(1) and (3) of the Act. Regarding the cost-of-living adjustment, the ALJ concluded that the company did not violate the Act by discontinuing payments, reasoning that to obligate the company to continue the adjustments would be, in effect, an improper writing of the contract for the parties.

---

1. Section 8(a)(1) of the National Labor Relations Act makes it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the right to self-organization, to form, join or assist labor organizations, to bargain collectively and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. 29 U.S.C. § 158(a)(1). Accordingly, it has been held that violations of § 8(a)(2), (3), (4), and (5) are also violations of § 8(a)(1). See *United Steelworkers of America, AFL–CIO–CLC v. NLRB*, 530 F.2d 266, 270 n. 6 (3d Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976).

On review, the Board summarily affirmed the rulings, findings, and conclusions of the ALJ on the bargaining and reinstatement issues. The Board reversed, however, on the COLA issue, noting that a COLA survives the expiration of a collective bargaining agreement and cannot be altered without bargaining. The discontinuation of the payments, therefore, violated § 8(a)(1) and (5) of the Act.

## II.

The company contends in its petition for review that the Board erred both in finding that it engaged in bad faith bargaining during the course of negotiations, and in determining that the two day strike was a demonstration against unfair labor practices. Our scope of review is limited; the Board's decision is to be upheld if its factual findings are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e), (f); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Graham Architectural Products Corp. v. NLRB,* 697 F.2d 534, 537 (3d Cir.1983).

The company further contends that the Board erred in holding that the cost-of-living provisions were terms and conditions of employment surviving expiration of the contract. As this issue requires us to interpret and apply legal precepts and to interpret the expired contract, our review is plenary. *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 182, 92 S.Ct. 383, 399, 30 L.Ed.2d 341 (1971); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981).

Whether the company engaged in bad faith bargaining requires separate consideration of its conduct both prior to and following the strike. Therefore, we proceed by addressing first whether the company engaged in bad faith bargaining during negotiations prior to the strike; second, whether substantial evidence supports the finding of an unfair labor practice strike; and third, whether the company engaged in unfair labor practices following the strike.

We then consider whether the company violated the Act by discontinuing the cost-of-living adjustments.

## III.

Section 8(a)(5) of the National Labor Relations Act makes it an unfair labor practice for an employer to refuse to bargain collectively with its employees' representatives. Section 8(d), which defines collective bargaining, provides:

[T]o bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

The Board held that, prior to the November strike, the company engaged in bad faith bargaining, basing its decision on the company's proposals on merit reviews, posting and bidding procedures, and work jurisdiction. We consider each of these proposals *seriatim.*

At the first bargaining meeting, the company proposed that the merit review clause be revised to place the reviews of employee performance solely within the company's discretion. This proposal was previously agreed to by the technical union. The Board held that for the union to agree to the revision would be a waiver of its right of representation of the employees on the issue of merit wage increases during the term of the contract, and further, for the company to insist on the waiver would be to deny recognition of the union. The Board, therefore, found a bad faith refusal to bargain.

It is settled that to recognize that employees have statutory rights to bargain collectively as to conditions of employment

is not to say that an employer may not bargain for control over those conditions. *NLRB v. American National Insurance Co.,* 343 U.S. 395, 407–08, 72 S.Ct. 824, 831, 96 L.Ed. 1027 (1952); *see also NLRB v. Rockaway News Supply Co.,* 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953) (holding that employees may bargain away their statutory right to strike). In *American National,* the Supreme Court held that an employer does not commit a *per se* unfair labor practice by bargaining for a management functions clause that gives management exclusive control over matters that otherwise would be subject to the duty to bargain. 343 U.S. at 409, 72 S.Ct. at 832. Similarly, the company here did not violate the Act by insisting on a clause by which it would maintain exclusive control over merit increases. Because there was no violation of the Act, the Board's basis for finding bad faith in bargaining with regard to the merit review clause falls. Moreover, the company's proposal should not be deemed to be beyond the bounds of reasonable bargaining because a similar proposal was accepted by the technical union.

The Board also found that the company's demand for unilateral control of promotional opportunities by proposing elimination of the posting and bidding provisions was evidence of bad faith bargaining. A similar analysis controls this issue, and again, *American National* is dispositive. There is no *per se* violation of the Act in attempting to obtain control over conditions of employment during the bargaining process.

The Board found a further bad faith refusal to bargain in the company's proposals regarding the work jurisdiction provision. Originally, the company proposed deletion of the clause but later modified its position to insert language expressly recognizing the overlap in personnel and asserting the company's intention not to expand that overlap substantially. The Board found the difference between these two positions "essentially non-existent." We disagree. There is a great deal of difference between a contract clause that allows an employer to use any employees to perform work generally performed by union members and one that memorializes the undisputed fact that there is some overlap between bargaining unit and non-bargaining unit members and states that the overlap will not be expanded substantially. Contrary to the Board's conclusion, there simply is not enough evidence in the record to support a finding that the company's attempts to modify the work jurisdiction clause were made in bad faith. We conclude that the company was intent on doing no more than ensuring that the new contract accurately reflected the existing division of work. In addition, the Board reached its conclusion in part because the company withdrew its modified proposal by letter in November. The record does not support this conclusion.

It appears that the Board, by finding bad faith in these lawful proposals, is doing exactly what it may not do. The Supreme Court has stated that "the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements." *American National,* 343 U.S. at 404, 72 S.Ct. at 829. The Court has further stated that § 8(d) was meant to prevent the Board from controlling the settling of the terms of collective bargaining agreements. *NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 487, 80 S.Ct. 419, 426, 4 L.Ed.2d 454 (1960). We conclude, therefore, that here the Board has improperly injected itself into the bargaining process.

IV.

We next consider whether the two day strike by the union may be properly classified as an unfair labor practice strike. Characterizing the strike is important because, first, it determines whether the company violated § 8(a)(1) and (3) of the Act by refusing to reinstate four of the striking employees upon their unconditional offer to return to work. Second, it determines whether the company engaged in bad faith bargaining when it proposed replacing the union shop clause with a maintenance of membership clause.

The Board found that the strike was an unfair labor practice strike based on two unfair labor practices—bad faith bargaining prior to the strike and failure to remedy a previous unfair labor practice. Because we have concluded that there was no bad faith bargaining prior to the strike, we may not accept the Board's first reason for concluding that it was an unfair labor practice strike. There remains, however, the second stated basis upon which the Board's determination of an unfair labor practice strike was founded. Because a strike will be deemed an unfair labor practice strike if it was caused, at least in part, by an unfair labor practice, *Latrobe Steel Co. v. NLRB,* 630 F.2d 171, 181 (3d Cir.1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 104, 70 L.Ed.2d 92 (1981), if the second basis has merit, we must affirm the Board's conclusion.

■ In 1979, the Board found that the company violated § 8(a)(1) and (5) of the Act by failing to evaluate employee performance and to grant merit increases where warranted as required by its contract with the union. *Struthers Wells Corp.,* 245 N.L.R.B. 1170 (1979), *enforced mem.,* 636 F.2d 1210 (3d Cir.1980), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 419 (1981). This unfair labor practice was not yet remedied as of the November 1980 strike. The failure to remedy an unfair labor practice is, of course, a continuation of that unfair labor practice. It follows that a strike called to protest that failure to remedy is an unfair labor practice strike. *See Ricks Construction Co.,* 259 N.L.R.B. 295 (1981).

Although admitting that the prior charge was not yet remedied, the company forcefully argues that there was no causal connection between the failure to remedy and the strike. But evidence was present in the record—albeit slim, it nevertheless was there—that could allow the Board to reach the opposite conclusion. A statement was made at the strike vote meeting to the effect that the company had not yet complied with the remedy ordered by the Board in 1979. It is possible to conclude that the employees went on strike to protest the company's failure to remedy once the contract and its prohibition against strikes expired. Accordingly, we will not disturb the Board's determination, based on substantial evidence, that the strike was a demonstration against the company's unfair labor practice.

Having concluded that the strike was an unfair labor practice strike, we can address whether the company violated § 8(a)(1) and (3) by refusing to reinstate striking employees. We also consider whether it engaged in bad faith bargaining when it proposed replacing the union shop clause with a maintenance of membership clause, thereby violating § 8(a)(1) and (5).

## V.

■ Section 8(a)(3) makes it an unfair labor practice for an employer to discriminate in regard to hire or tenure of employment tending to encourage or discourage membership in a labor organization. 29 U.S.C. § 158(a)(3). It is settled that employees, striking to protest an unfair labor practice, do not lose their status as employees and are entitled to full reinstatement upon an unconditional offer to return to work even if replacements have been hired. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309, *reh'g denied,* 351 U.S. 980, 76 S.Ct. 1043, 100 L.Ed. 1495 (1956). Therefore, the Board properly held that the company violated § 8(a)(1) and (3) of the Act when it refused reinstatement to four of the striking employees.

■ As noted earlier, whether the strike was an unfair labor practice strike also has bearing on whether the company bargained in bad faith following the strike. As a result of the strike, the company proposed replacing the union shop clause with a maintenance of membership clause, admitting that its sole purpose was to avoid requiring its new employees, hired as replacements during the strike, to join the union. In *Mastro Plastics,* the Supreme Court stated that there is an inherent inequity in any interpretation of the Act that allows a party to take advantage of its own unlawful

conduct. *Id.* at 287, 76 S.Ct. at 360. We agree with the Board, therefore, that the attempts by the company to negotiate for changes in the contract based solely on the fact of the strike caused by its own unfair labor practice are evidence of bad faith bargaining in violation of § 8(a)(1) and (5), 29 U.S.C. § 158(a)(1), (5).

## VI.

Finally, we must decide whether the company violated § 8(a)(1) and (5) of the Act by "cancelling" the cost-of-living wage adjustment (COLA) "scheduled" for January 1981.

The Board argues that the failure to pay the COLA violated the Act for several reasons. First, it contends that the COLA is an existing term and condition of employment that survives the expiration of the collective bargaining agreement. This contention is contrary to the Board's own case law. In *Meilman Food Industries, Inc.,* 234 N.L.R.B. 698 (1978), the Board held that the refusal to pay a COLA after the expiration of a collective bargaining agreement, where the adjustment is to be calculated as of a date *prior* to the expiration of the agreement, is a unilateral change in the existing wage structure and a violation of § 8(a)(1) and (5) of the Act. The Board further held that there is no violation of the Act for a unilateral change where the calculation date occurs *after* the expiration of the agreement. *Meilman,* 234 N.L.R.B. at 698 n. 2.

■ Under *Meilman,* the company did not violate the Act by refusing to grant a COLA because the calculation date of November 15, 1980 was beyond the term of the expired agreement. The COLA was not a condition of employment that survived the expiration of the contract. For the Board to impose an obligation on the company to pay the adjustment would be an improper writing of the contract for the parties. *Cf. H.K. Porter Co., Inc. v. NLRB,* 397 U.S. 99, 102, 90 S.Ct. 821, 822, 25 L.Ed.2d 146 (1970) (holding that the Board may not compel parties to agree to a substantive contractual provision of a collective bargaining agreement).

■ Second, even assuming the COLA is an existing term that survives expiration of the contract, it is well settled that an employer does not violate the Act by unilaterally changing the terms and conditions of employment when it has first granted the union the opportunity to bargain about the mandatory subject in question. *Cf. NLRB v. Haberman Construction Co.,* 641 F.2d 351, 357 (5th Cir.1981) (citing *NLRB v. Katz,* 369 U.S. 736, 747–48, 82 S.Ct. 1107, 1113–1114, 8 L.Ed.2d 230 (1962)). The Board's argument that the union did not waive its right to bargain with regard to the cost-of-living clause is not supported by the evidence. The record clearly indicates, as the ALJ found, that the company attempted to arrange a meeting with the union to discuss the January 1981 COLA. By letter, the union rejected the offer to negotiate future cost-of-living adjustments. We conclude that this rejection resulted in a waiver by the union.

■ Third, the Board argues that the company violated § 8(a)(5) of the Act by withholding future cost-of-living payments to obtain leverage in negotiations, analogizing the instant case to the situation in which an employer promises a wage increase effective at a later date but withholds it to use as leverage during collective-bargaining negotiations. The analogy does not survive close analysis. There was no promise here but merely a statement at the outset of negotiations that the company was not proposing deletion of the cost-of-living provisions. Because there was no agreement reached between the parties, the company did not obligate itself to continue the cost-of-living payments. The Supreme Court has made clear that an employer commits no unfair labor practice when it uses economic pressure in support of its legitimate bargaining position. *American Ship Building Co. v. NLRB,* 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). Furthermore, the Board does not have the authority to function "as an arbiter of the sort of economic weapons the parties can

use in seeking to gain acceptance of their bargaining demands." *NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 497, 80 S.Ct. 419, 431, 4 L.Ed.2d 454 (1960). Therefore, the Board in the instant case exceeded the scope of its authority by ordering the company to continue making cost-of-living payments beyond the term of the expired contract.

## VII.

The petition for review and the cross-application for enforcement will be granted in part and denied in part in accordance with the foregoing.

Each side to pay its own costs.