**NATIONAL LABOR RELATIONS BOARD, Petitioner in 90–3592,**

v.

**ALAN MOTOR LINES INC., Respondent. Petitioner in 90–3647.**

Nos. 90–3592, 90–3647.

United States Court of Appeals, Third Circuit.

Argued March 1, 1991.

Decided July 5, 1991.

Gerald L. Dorf (argued) and John C. Scannell, Gerald L. Dorf, P.C., Rahway, N.J., for petitioner/cross-respondent, Alan Motor Lines, Inc.

Judy A. Dowd, Supervisory Atty., John H. Fawley (argued), Atty., N.L.R.B., Washington, D.C., Jerry M. Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, for respondent/cross-petitioner, N.L.R.B.

Before STAPLETON and ALITO, Circuit Judges and CAHN, District Judge [*].

## OPINION

ALITO, Circuit Judge:

Alan Motor Lines, Inc. has petitioned for review of an order of the National Labor Relations Board holding, *inter alia*, that the company violated Section 8(a)(1) and (3) of the National Labor Relations Act by refusing to rehire an employee because he engaged in union activities. The Board has also petitioned for enforcement of its order. Because the Board's order is inconsistent with a critical finding of fact that was made by the administrative law judge and left undisturbed by the Board, we will grant the company's petition for review and set aside portions of the Board's order. We will grant enforcement of the remaining portions of the order.

### I. Facts

A. The following facts were found by the ALJ and are not challenged at this juncture by the parties. In late September 1987, Nicholas Gaudio, the president of Alan Motor Lines, received two reports that a tractor-trailer owned by the company and assigned to Thomas Furman, a company employee, had attempted to force a motorist off the road on the morning of September 21. On September 24, the executive director of the New Jersey Motor Truck Association wrote to Gaudio regarding this incident. At about the same time, Gaudio received a telephone call from an individual who was "very excited" and who stated that he had been "run off the road" and "was almost killed."

During this same period, Furman, a former member of Teamsters Local 469, began to discuss the possibility of union representation with his fellow drivers. On September 28, he contacted Fred Potter, president of Local 469, and a meeting to discuss representation was scheduled for October 1.

On September 30, Gaudio met with Furman to discuss the traffic incident. The ALJ found that Gaudio had no knowledge of Furman's union activities as of this date. When Gaudio told Furman about the reports he had received, Furman became "very upset" and stated that Gaudio should "stand behind" him without questioning him about the incident. Furman screamed highly offensive and obscene epithets at Gaudio and ran out of the office in a rage, declaring that he did not need the job and would look elsewhere for employment.

The following day, October 1, Furman and six other employees met with Potter and signed union authorization cards. The next day, Gaudio began to question employees who attended the meeting regarding union activity. Gaudio telephoned one employee, Richard DiGangi, and asked who was the leader of the unionization movement. Gaudio also inquired whether Di-Gangi had signed an authorization card and stated that "whoever signed a card was being released or terminated." When another employee, Anthony Giannotto, informed Gaudio that he had signed a card, Gaudio told him that he was fired. On October 4, Furman met with Potter regarding these developments.

[*] Hon. Edward N. Cahn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

On October 5, picketing began outside the plant. Gaudio refused to recognize the union but eventually informed Potter that all of the employees except Furman could return to work if they wanted. Gaudio told Potter that Furman could not return because "he quit his job" and was "a troublemaker." In speaking with another employee, Gaudio again described Furman as a "troublemaker" and mentioned Furman's involvement in both the traffic incident and the union activities.

The picketing continued until October 8, when Potter handed Gaudio a letter on the union's letterhead stating that the employees were offering to return to work unconditionally. Gaudio refused to accept the letter from Potter but spoke with each employee individually outside Potter's presence. Gaudio told the employees that they could return to work if they signed a form promising not to participate in union formation. The next day, however, the company permitted all employees except Furman to return to work without signing such a form.

A few weeks later, the company and union signed a consent agreement to hold a representation election. Prior to the election, Gaudio spoke with DiGangi on several occasions and asked DiGangi to tell the other drivers to forget about the union. Gaudio stated that he would "close down the ... place before there was a union" and that the employees would "end up just like Tommy Furman, with no job at all" if they voted for the union. The union lost the election but chose not to file any objections.

B. The present litigation was initiated when Local 469 filed an unfair labor practice charge with the National Labor Relations Board on October 5, during the height of the controversy regarding union representation. The General Counsel subsequently issued a complaint, which was

amended at the beginning of the hearing before the ALJ. Citing both the company's treatment of Furman and its treatment of the other employees interested in unionization, the General Counsel alleged that the company committed unfair labor practices in violation of Section 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1) and (3).[1]

After a two-day hearing, the ALJ concluded that the company had engaged in unfair labor practices within the meaning of Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), "by interrogating employees concerning their activities on behalf of Local 469, by threatening its employees with discharge and plant closure if they supported Local 469, by stating to its employees that it would never allow a union and by conditioning the reinstatement of striking employees on their agreeing to disclaim a desire to be represented by Local 469." The ALJ held, however, that Furman had not been unlawfully discharged. The ALJ found that Furman was not fired but had voluntarily quit during the September 30 meeting with Gaudio. Turning to the question whether the company had unlawfully refused to rehire Furman because of his union activity, the ALJ applied the test set out in *Wright Line*, 251 N.L.R.B. 1083, 1089 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). Under this test, if the General Counsel makes a prima facie showing that protected conduct was a motivating factor in the employer's decision, the burden shifts to the employer to demonstrate that the "same action would have taken place even in the absence of the protected conduct." *Wright Line*, 251 N.L.R.B. at 20–21. The ALJ concluded that the General Counsel had made a prima facie showing that protected conduct was a motivating factor in the decision not to rehire Furman. By the time the other employees were permitted to return to work,

1. Section 8(a)(1) and (3), 29 U.S.C. § 158(a)(1) and (3), provide in pertinent part:
  (a) It shall be an unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . .
    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization;
  . . .

the ALJ noted, Gaudio had learned that Furman "was the principal person responsible for bringing in the Union," and the ALJ observed that there was "no question concerning Gaudio's attitude towards having a Union."

Although the ALJ found that the General Counsel had made a prima facie showing, the ALJ also concluded that the company had satisfied its burden of demonstrating that Furman would not have been rehired even in the absence of the protected conduct. Accepting Gaudio's testimony regarding the September 30 meeting with Furman and Gaudio's reasons for refusing to rehire Furman, the ALJ wrote:

> Gaudio testified that ... [Furman's] vulgarities were of such a nature that they affected him "terribly." Gaudio testified that he did not rehire Furman because Furman quit and because of the vulgarities. As Gaudio testified, he was never "called down like I was called down by Mr. Furman" in approximately 40 years of being in business. Accordingly, I find that [the company] has satisfied its burden under *Wright Line* and, therefore, the allegation [regarding Furman] is dismissed.

The ALJ issued a recommended order consistent with his conclusions. The Regional Director excepted to the ALJ's decision.

A divided three-member panel of the Board reversed the ALJ's decision with respect to Furman. Although the Board agreed with the ALJ's finding that Furman had quit his job, the panel majority held that the company had not established that its refusal to rehire Furman was based on a legitimate non-discriminatory reason. The majority pointedly declined to overturn the ALJ's assessment of Gaudio's credibility, stating that it was "not discounting the [ALJ's] credibility resolutions." The majority apparently reasoned, however, that Gaudio's testimony was outweighed by the other evidence of discriminatory motivation. The majority wrote that the ALJ "failed to assess properly the significance of all the evidence as credited by him." The majority dismissed the significance of Gaudio's testimony concerning his reasons

for refusing to rehire Furman, labelling that testimony as "a bare claim" and "little more than an ipse dixit that the [company's] motive ... was lawful." The majority also suggested that this portion of Gaudio's testimony conflicted with other parts of his testimony. Based on this analysis, the Board held that the company's refusal to rehire Furman violated Section 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1) and (3). Accordingly, the Board broadened the ALJ's proposed order to require Furman's reinstatement with back pay and benefits, as well as other related relief.

In dissent, Member Devaney contended that the majority had improperly overturned the ALJ's credibility determination that Gaudio testified truthfully when he stated that he would not have rehired Furman even if Furman had not engaged in protected union activity. Member Devaney wrote:

"The Judge credited Gaudio's explanation and, by reversing the Judge, the majority reverses his credibility resolutions." After the company's motion for reconsideration was denied, the petitions now before us were filed.

## II.

■ We must sustain the Board's finding of an unfair labor practice if the finding is based upon a "reasonably defensible" construction of the Act (*Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)) and is supported by substantial evidence on the record considered as a whole (*Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987)). Despite these deferential standards of review, we cannot sustain the Board's decision in the present case because it is inconsistent with the ALJ's undisturbed finding of fact on the critical question whether the employer would have rehired Furman in the absence of protected activity.

■ An employer commits an unfair labor practice in violation of the Act when it refuses to hire or rehire an individual be-

cause of anti-union animus. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983); *Struthers Wells Corp. v. NLRB*, 721 F.2d 465, 471 (3d Cir.1983). "[T]he General Counsel bears the initial burden of making a *prima facie* showing by a preponderance of the evidence that protected conduct was a motivating factor in the employer's conduct. Once the General Counsel demonstrates a *prima facie* case, the burden shifts to the employer to demonstrate that it would have taken the same action even in the absence of protected conduct by the employee[ ]." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 813 (3d Cir.1986). *See also NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983); *Hanlon & Wilson Co. v. NLRB*, 738 F.2d 606, 610 (3d Cir.1984); *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

▮ In this case, as previously noted, the ALJ concluded both that the General Counsel had established a *prima facie* case regarding the refusal to rehire Furman and that the employer had demonstrated that it would not have rehired Furman even if he had not engaged in protected activity. The ALJ's conclusion on the latter point was based squarely upon a credibility determination. It is clear that the ALJ interpreted Gaudio's testimony to mean that, even if Furman had not engaged in protected conduct, Gaudio would not have rehired him because he quit and called Gaudio obscene names. It is also clear that the ALJ, who heard Gaudio testify and observed his demeanor, found that this testimony was truthful.

▮ The Board, of course, was not bound to accept the ALJ's credibility finding. The Board's own precedents establish, however, that an ALJ's credibility findings may not be rejected unless the "clear preponderance of all the relevant evidence" shows that the ALJ was incorrect. *Standard Dry Wall Products*, 91 N.L.R.B. 544 (1950), *aff'd* 188 F.2d 362 (3d

Cir.1951). Moreover, if the Board overturns an ALJ's credibility determination, the ALJ's determination must be considered in determining whether the Board's finding is supported by substantial evidence. *Universal Camera Corp. v. Labor Board*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951); *Allbritton Communications Co. v. NLRB*, 766 F.2d 812, 817 (3d Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986); *Eastern Engineering & Elevator Co. v. NLRB*, 637 F.2d 191, 197 (3d Cir.1980). *See also Weather Shield Mfg. Inc. v. NLRB*, 890 F.2d 52, 57 (7th Cir 1989); *NLRB v. Stor–Rite Metal Products*, 856 F.2d 957, 964 (7th Cir.1988).

Although the record in this case contains considerable evidence regarding Gaudio's anti-union sentiments, the Board did not conclude that this evidence was sufficient under its own precedents to overturn the ALJ's credibility determination. The Board left the ALJ's determination undisturbed, stating expressly that it was "not discounting the judge's credibility resolutions." Instead, the Board appears to have taken the view that Gaudio's truthful testimony regarding his reasons for refusing to rehire Furman was outweighed by other evidence.

The Board's analysis was self-contradictory. If the ALJ's credibility determination was correct, Gaudio would not have rehired Furman even if he had not engaged in protected activity. On the other hand, if Gaudio would have rehired Furman had he not engaged in protected activity, then Gaudio's testimony was untruthful and the ALJ's credibility determination was incorrect. Either Gaudio testified truthfully or he did not. Either Gaudio would not have rehired Furman in the absence of protected conduct or he would have rehired him. The Board could not logically have it both ways.

"[T]he Board's decision stands or falls on its express findings and reasoning." *NLRB v. Indianapolis Mack Sales & Service, Inc.*, 802 F.2d 280, 285 (7th Cir.1986). *See also NLRB v. P * I * E Nationwide, Inc.*, 923 F.2d 506, 518 (7th Cir.1991); *Slaughter v. NLRB*, 794 F.2d 120, 128 (3d Cir.1986). Rejection of an ALJ's credibility

finding is a significant step under the Board's precedents, and the Board pointedly declined to take that step, stressing that it was not "discounting the [ALJ's] credibility resolutions." Thus, we must review the Board's decision in light of the ALJ's undisturbed finding that Gaudio testified truthfully when he stated that he would not have rehired Furman. In the face of this undisturbed finding, the Board's decision cannot be sustained. Since Gaudio, according to the plain meaning of the ALJ's finding, would not have rehired Furman even if Furman had not engaged in protected activity, the refusal to rehire was not an unfair labor practice.

The General Counsel's arguments before us on behalf of the Board simply do not come to grips with the ALJ's finding. The General Counsel correctly contends (Br. at 13–14) that the Board was not obligated to accept the employer's explanation for not rehiring Furman. But this argument hardly explains the Board's self-contradictory analysis. The General Counsel also maintains (Br. at 17) (emphasis added) that "[c]rediting [Gaudio's] testimony ... established only that Gaudio actually *stated* that Furman's resignation and vulgarities were the reasons why the Company refused to rehire him." This argument, however, completely mischaracterizes what the ALJ found. The ALJ made a finding about Gaudio's motivation, not simply about what Gaudio said, either before or during the hearing.

The main thrust of the General Counsel's argument is that we should sustain the Board's decision because it is supported by substantial evidence. In order to take that approach, we would have to interpret the Board's decision as if it had rejected the ALJ's credibility finding, contrary to the express disclaimer in the Board's decision. We cannot take that approach. If we sustained the Board's decision based on a rationale that the Board might have adopted but did not adopt, we would "deprecate the administrative process for [we] would propel the court into the domain which Con-

gress has set aside exclusively for the administrative agency." *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). We must instead review the Board's decision based on its own findings, and in this case the ALJ's undisturbed finding regarding Gaudio's testimony fatally undermines the Board's decision with respect to Furman.

We will therefore grant the petition for review and set aside the portions of the Board's order relating to Furman.[2] We will deny the Board's petition for enforcement insofar as it pertains to Furman, but will grant the petition with respect to the remainder of the order.

---

**2.** Specifically, we will set aside and deny enforcement of paragraph 2(a)–(c) of the Board's order.