

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# NLRB v. Smucker Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2406

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"NLRB v. Smucker Co" (2005). 2005 Decisions. Paper 1210.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1210

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 04-2406

————

NATIONAL LABOR RELATIONS BOARD,
Petitioner

v.

SMUCKER COMPANY,
Respondent

————

On Application for Enforcement
of an Order of the National Labor Relations Board
(4-CA-28672)

————

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2005

Before: SLOVITER and FISHER, Circuit Judges, and
POLLAK, District Judge[*]

(Filed: May 11, 2005)

————

OPINION

————

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, <u>Circuit</u> <u>Judge</u>.

The National Labor Relations Board ("Board") petitions this court for enforcement of its order entered January 30, 2004, reported at <u>Smucker Co.</u>, 341 N.L.R.B. No. 10 (2004), requiring the Smucker Company (hereinafter "Smucker" or "Respondent"), <u>inter alia</u>, to remit limited backpay to Fred Cosenza, Timothy Browne, and Wayne Miller, all of whom are self-admitted union "salts." In response to the Board's petition, Smucker filed a cross-petition for review and asks this court to refuse enforcement of the Board's order.

The Board exercised jurisdiction over this proceeding under 29 U.S.C. §§ 160(a) and (b). The Board's decision and order was a final order with respect to all the parties. 29 U.S.C. § 160(c). Because the alleged unfair labor practice occurred within this Circuit, we may exercise jurisdiction pursuant to 29 U.S.C. §§ 160(e) and (f). For the reasons explained below, we will grant the Board's petition and order enforcement of the January 30, 2004 order.

**I.**

Smucker, a Pennsylvania corporation, is a contractor that performs work such as drywall installation, drywall finishing, and metal framing. Sometime in the spring of 1999, Smucker learned that it was the successful bidder for interior-construction work on a building project at Villanova University in suburban Philadelphia.

On April 19, 1999, three union organizers, Browne, Cosenza, and another, went to Smucker's office. Browne is an organizer with the International Brotherhood of

2

Electrical Workers, Local Union 98 ("IBEW"); Cosenza is an organizer with the

Philadelphia Building Trades Council. The record reflects that the men went to

Smucker's office with the intent to engage in "salting."[1]

When Browne and Cosenza arrived at Smucker's office, the receptionist provided

them with job application forms. The receptionist told the men that there was no need for

them to fill out the forms at the office; she further stated that they were free to photocopy

the forms for dispersal to their friends.

On April 26, 1999, Browne and Cosenza returned to Smucker's office

accompanied by Miller, an organizer with the Sprinkler Fitters Local Union 692. All

three men were wearing union shirts and insignia. The three men provided the

receptionist with their completed applications. Thereafter, Todd Montgomery, Smucker's

Human Resources Manager, entered the reception area and asked Browne, Cosenza, and

Miller if they were willing to take a brief written test. They agreed and proceeded to

complete the four-page test. After they completed the examinations, Montgomery

returned to the reception area. What happened next is the subject of some dispute.

At the administrative hearing, the union organizers maintained that when

Montgomery reentered the reception area, "Browne asked [Montgomery] how we did [on

---

[1] "Salting" is a union organizing technique whereby a union sends one or more of its members into a business seeking employment; once employed, the members attempt to unionize the workplace from the inside. See generally Nat'l Labor Relations Bd. v. Town & Country Elec., Inc., 516 U.S. 85, 96 (1995); Nat'l Labor Relations Bd. v. FES, a Div. of Thermo Power, 301 F.3d 83, 90 n.2 (3d Cir. 2002).

the tests]. . . .  The answer was, 'you'se did real good, everything looks good.'"  App. at 75.  Browne further inquired "how long the applications were good for"; to which Montgomery responded, "'[t]hey're good forever.'"  App. at 75.  Finally, Browne asked Montgomery if Smucker was then hiring; Montgomery replied that the company was not hiring at that time, but expected to do so soon and that Browne, Cosenza, and Miller "would be hearing from him."  App. at 75.  According to the union organizers, after having this exchange with Montgomery, they left Smucker's office.

Montgomery, in contrast, denied that either Browne, Cosenza, or Miller had asked him how long the applications remained current; he denied having volunteered such information.[2]  He testified that after returning to the reception area he told the men that they "had done pretty well" on the examinations and that Smucker's work outlook was "okay."  App. at 263.  Montgomery stated that Browne then raised the subject of the Villanova job.  He testified, "Browne . . . said to me that [Smucker is] working for Shoemaker down there [at Villanova] and we don't want to do that."  App. at 263.[3]

_____

[2]  In the administrative proceedings, Smucker maintained that it had a policy whereby it only considered an application "active" for the thirty days following its submission and that, after this thirty-day period, an applicant would need to submit a new application in order to be considered for employment.  App. at 4.  The Administrative Law Judge, however, ultimately found that Smucker only adopted this thirty-day expiration policy after Browne, Cosenza, and Miller's visit; indeed, he found that Smucker's adoption and posting of the thirty-day policy "was a direct and immediate reaction caused by the . . . applications by the union representatives . . . to prevent them from being hired."  App. at 6.

[3]  The Shoemaker Company is a general contracting firm which, according to Miller, had "gone bad on" the unions.  App. at 236.  Apparently, Shoemaker was the general

4

Montgomery testified that this comment confused him, but he told Browne, Cosenza, and Miller that "we're not currently hiring. . . . [But] [i]f we need you we will give you a call." App. at 263. Montgomery testified: "Browne [then] came over and he put his arm around me and he said 'you're wrestling with the union now' and I said 'what's that supposed to mean[?]'" App. at 263. Browne responded, "'you're a smart guy you figure it out,'" and then left the office with his comrades. App. at 264. Thereafter, Smucker neither hired Browne, Cosenza, or Miller nor considered them for employment. Smucker did, however, contact and hire other workers in June and July 1999.

On October 15, 1999, the IBEW filed an unfair labor charge with the Board. As a result, on December 21, 1999, the Board's General Counsel issued a complaint alleging that Smucker had unlawfully refused to hire or consider hiring Browne, Cosenza, and Miller because of their union affiliation and had thereby violated sections 8(a)(3) and (1) of the National Labor Relations Act ("Act"). Starting on November 15, 2000, an Administrative Law Judge ("ALJ") sitting in Philadelphia presided over a two-day hearing on this complaint.

The ALJ ultimately issued a recommended decision finding Smucker liable but also finding that the union organizers had cheated on the examination administered by Montgomery on April 26, 1999.[4] As remedy, the ALJ recommended that backpay be

contractor on the Villanova job.

[4] The ALJ stated that it was "clear that at least Browne and Miller not only helped one another [on the examination] but also may have written the same pages for the other. The

5

awarded, but opined that due to the cheating, Browne, Cosenza, and Miller's backpay calculation should not extend past November 16, 2000 – the date that Montgomery testified about the tests and Smucker "discover[ed]" that the discriminatees had cheated. App. at 7. The ALJ further recommended against instatement for Browne, Cosenza, and Miller, finding that "their flagrant conduct [in cheating on the examination] demonstrates that they are unfit to be Respondent's employees." App. at 7.

In a Decision and Order entered on January 30, 2004, the Board adopted the ALJ's recommended decision in all pertinent respects. On May 17, 2004, the Board petitioned this court for enforcement. In response, Smucker filed a cross-petition for review asking this court to refuse enforcement of the Board's order.

## II.

This court reviews the Board's findings of fact under a deferential standard and thus "accept[s] the Board's factual determinations and reasonable inferences derived [therefrom] . . . if they are supported by substantial evidence." Citizens Publ'g & Printing Co. v. Nat'l Labor Relations Bd., 263 F.3d 224, 232 (3d Cir. 2001) (internal citation and quotations omitted); see also 29 U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."). The United States Supreme Court has explained that a finding of fact is supported by substantial evidence on the record as a whole if "it would

answers [to several questions], even the blanks, are the same. The bad spelling is identical." App. at 4.

6

have been possible for a reasonable jury to reach the Board's conclusion." Allentown Mack Sales & Serv., Inc. v. Nat'l Labor Relations Bd., 522 U.S. 359, 366-67 (1998). Thus, we have been directed that we should not disturb the Board's factual findings or otherwise "displace the Board's choice between two fairly conflicting views" merely because we would have made a contrary determination "had the matter been before [us] de novo." Universal Camera Corp. v. Nat'l Labor Relations Bd., 340 U.S. 474, 488 (1951).

Further, although this court's review over the Board's legal analysis is plenary, "[b]ecause of the Board's 'special competence' in the field of labor relations, its interpretation of the Act is accorded substantial deference." Pattern Makers' League of N. Am. v. Nat'l Labor Relations Bd., 473 U.S. 95, 100 (1985). Thus, this court must uphold the Board's interpretations of the Act if they are reasonable. Ford Motor Co. v. Nat'l Labor Relations Bd., 441 U.S. 488, 497 (1979). In accordance with this deference, "[w]e will not disturb a backpay order unless it can be shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the Act." Atl. Limo., Inc. v. Nat'l Labor Relations Bd., 243 F.3d 711, 718 (3d Cir. 2001) (internal citations and quotation omitted).

Under the Act, it is unlawful for an employer to refuse to hire or consider for hire a job applicant because of such applicant's union activity, sympathy, or affiliation. Nat'l Labor Relations Bd. v. Alan Motor Lines, Inc., 937 F.2d 887, 890-91 (3d Cir. 1991). To

7

establish a discriminatory refusal-to-hire case, the General Counsel must show:

> (1) that the respondent was hiring, or had concrete plans to hire at the time of the alleged unlawful conduct; (2) that the applicants had experience or training relevant to the announced or generally known requirements of the positions for hire, or in the alternative, that the employer has not adhered uniformly to such requirements, or that the requirements were themselves pretextual or were applied as a pretext for discrimination; and (3) that antiunion animus contributed to the decision not to hire the applicants. Once this is established, the burden will shift to the respondent to show that it would not have hired the applicants even in the absence of their union activity or affiliation.

FES, a Div. of Thermo Power, 331 N.L.R.B. 9, 12 (2000) (internal footnotes omitted), enforced, 301 F.3d 83 (3d Cir. 2002). As recounted above, the Board found that the General Counsel had carried its burden under FES, a Div. of Thermo Power and that Smucker had not shown that it would have refused to hire Browne, Cosenza, and Miller even in the absence of their union affiliations. Due, however, to the fact that it found that Browne, Cosenza, and Miller had all cheated on their applications, the Board limited the award of backpay.

Smucker raises three principal arguments in support of its position that this court should reject the Board's decision and decline enforcement of the resulting order. See Br. of Resp't at 16. First, Smucker argues that Browne, Cosenza, and Miller were not bona fide applicants for employment and thus should not be afforded any protection under the Act. Second, Smucker maintains that the Board erroneously interpreted its hiring needs during the relevant period and therefore erred in adopting the ALJ's finding that it unlawfully refused to hire or consider hiring Browne, Cosenza, and Miller. Third and

8

finally, Smucker argues that, even if this court declines to disturb the Board's finding of liability, the fact that Browne, Cosenza, and Miller cheated during the application process and further lied during the administrative hearing should disqualify them from receiving even the truncated damages award ordered by the Board. We will address these contentions seriatim.

## III.

It is Smucker's position that Browne, Cosenza, and Miller were not bona fide applicants but rather applied for the jobs as part of a "campaign of harassment directed at Smucker" and to lay the groundwork for the filing of unfair labor-practice charges. Br. of Resp't at 17. As a result, Smucker contends that Browne, Cosenza, and Miller are not entitled to the Act's protection.

As an initial matter, we note that the Supreme Court has specifically held that individuals on a union's payroll who are sent by the union to unionize an employer are entitled to protection under the Act. Nat'l Labor Relations Bd. v. Town & Country Elec., Inc., 516 U.S. 85 (1995). Thus, although in applying for the job, Browne, Cosenza, and Miller were working as salts with the "ulterior motive of trying to organize [Smucker] from the inside," App. at 6, such a fact, in-and-of-itself, is of no moment.

Furthermore, the Board affirmed the ALJ's factual finding that Browne, Cosenza, and Miller "'truly wanted to work for the Respondent. . . .'" App. at 1 (quoting decision of ALJ). This factual finding is supported by substantial evidence on the record as a

whole.  Allentown Mack Sales & Serv., Inc., 522 U.S. at 366-67; Citizens Publ'g & Printing Co., 263 F.3d at 232.  Therefore, we decline to disturb the Board's conclusion that Browne, Cosenza, and Miller were bona fide applicants entitled to protection under the Act.

Next, Smucker argues that the Board's finding of unlawful discrimination was grounded in unwarranted speculation regarding the company's hiring needs and protocol.  See generally FES, a Div. of Thermo Power, 331 N.L.R.B. at 12 (holding that, in refusal-to-hire cases, General Counsel must show, inter alia, "that the respondent was hiring, or had concrete plans to hire . . . at the time of the alleged unlawful conduct").  Smucker argues that the relevant time frame for the "alleged unlawful conduct," id., is the thirty-day period after Browne, Cosenza, and Miller submitted their applications, i.e., April 26 to May 26, 1999.  Although the record is clear that Smucker hired several workers in June and July 1999, it is undisputed that Smucker did not hire anyone in May 1999.  Referencing this hiring chronology and pointing to its supposed thirty-day application rule, see supra, note 2, Smucker maintains that it did not have "concrete plans to hire" during the pendency of Browne, Cosenza, or Miller's applications and that, by the time it did conduct its hiring, the applications were stale.  App. at 5.

The ALJ, however, found that Smucker did not adopt the thirty-day policy until after Browne, Cosenza, and Miller visited its office on April 26, 1999.  Indeed, the ALJ found that Smucker adopted and posted the thirty-day rule as "a direct and immediate

10

reaction" to the union organizers' visit and to "prevent them from being hired." App. at 6. He further found that Smucker's failure to hire anyone during the month of May was in all likelihood a "ruse" intended to avoid hiring the union members. App. at 5.

The Board, in adopting these findings, rejected Smucker's argument that its purported thirty-day application rule rendered the application of Browne, Cosenza, and Miller stale, as well as Smucker's attendant contention that the relevant time frame for consideration should be limited to April 26 through May 26, 1999. In adopting the ALJ's findings, the Board concluded that Smucker's hiring decisions in June and July of 1999 were in fact relevant. Considering the record as a whole, the Board's conclusion is supported by substantial evidence. Allentown Mack Sales & Serv., 522 U.S. at 366-67. We thus decline to disturb the Board's finding that Smucker had concrete plans to hire at the time of the alleged unlawful conduct.[5]

Finally, Smucker argues that, even if this court chooses not to disturb the Board's substantive findings, it should nonetheless decline to enforce the Board's ordered remedy. The Board's usual remedy for a refusal-to-hire violation under the Act is instatement and full backpay. See FES, a Div. of Thermo Power, 331 N.L.R.B. at 17. Nonetheless, if an employer shows that the discriminatee engaged in misconduct for which the employer

---

[5] The Respondent also contends that neither Browne, Cosenza, nor Miller were qualified for the sought-after positions and that the General Counsel failed to show that an antiunion animus animated its refusal to hire or consider hiring Browne, Cosenza, and Miller. The Board, of course, found to the contrary; and, after considering the record evidence as a whole, we conclude that the Board's conclusions are supported by substantial evidence.

11

would have disqualified any applicant, the usual remedy is not warranted.  See Marshall

Durbin Poultry Co., 310 N.L.R.B. 68, 69-70 (1993); John Cuneo, Inc., 298 N.L.R.B. 856,

857 n.7 (1990).  Rather, "if an employer satisfies its burden of establishing that the

discriminatee engaged in unprotected conduct for which the employer would have

discharged any employee, [ ]instatement is not ordered and backpay is terminated on the

date that the employer first acquired knowledge of the misconduct."  Marshall Durbin

Poultry Co., 310 N.L.R.B. at 70.

The Board accepted the ALJ's finding that Browne, Cosenza, and Miller cheated

on the hiring examination.[6]  The Board further agreed with the ALJ's conclusion that such

cheating would have provided Smucker with lawful grounds for refusing to hire Browne,

Cosenza, and Miller.  Thus, following the precedent of Marshall Durbin Poultry Co. and

John Cuneo, Inc., the Board concluded that Browne, Cosenza, and Miller should not be

awarded instatement; it further found that they were not entitled to any backpay beyond

November 16, 2000 – the day of the administrative hearing at which the testimony

regarding the tests was presented.

Smucker, however, pointing to the discriminatees' deceitful and apparently

---

[6] During their respective testimony at the administrative hearing, Browne, Cosenza, and Miller all denied that there was any cheating on the examination.  Considering that the Board found to the contrary, it also implicitly found that all three discriminatees lied under oath.  Furthermore, the finding of the ALJ was explicit:  "It may be that Cosenza did less cheating than the others, but [Smucker's] reception area was a small room in which Cosenza could easily see and hear what was going on; and he, as well as the others, lied at the [hearing] when answering that they did not cheat."  App. at 7.

12

perjurious conduct, argues that Browne, Cosenza, and Miller should not even receive the limited backpay award ordered by the Board. This court, however, must uphold the Board's interpretation of the Act if the interpretation is reasonable, see Ford Motor Co., 441 U.S. at 497, and thus will not disturb a backpay order unless it is "shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the Act." Atl. Limo., Inc., 243 F.3d at 718. Here, the Board, in conformance with its prior decisions interpreting the Act, refused instatement and awarded backpay but limited the backpay award to the period beginning on the date of Smucker's unlawful conduct and ending on the date that the cheating was discovered. This determination is reasonable, consonant with the policies undergirding the Act, and we see no reason to disturb it. Compare with ABF Freight Sys., Inc. v. Nat'l Labor Relations Bd., 510 U.S. 317, 325 (1994) ("Notwithstanding our concern about the seriousness of Manso's ill-advised decision to repeat under oath his false excuse for tardiness, we cannot say that the Board's remedial order in this case was an abuse of its broad discretion or that it was obligated to adopt a rigid rule that would foreclose relief in all comparable cases.").[7]

---

[7] This court, of course, does not condone cheating. Moreover, nothing in this opinion should be perceived as either approving of or turning a blind eye to perjury. Suffice it to say that the Board, in its measured interpretation of the Act, determined that such malfeasance did not warrant a wholesale denial of relief; this court, upon application of its deferential standard of review, finds the Board's interpretation not incommensurate with the policies expressed in the Act. The discriminatees' conduct, however, may well implicate other statutory provisions. See, e.g., 18 U.S.C. §§ 1001, 1621; 18 Pa. Cons. Stat. § 4902. The Board may reasonably be of the view that this is a matter best left to

**IV.**

As we have suggested throughout, the decisionmaker in cases such as this is the

Board.  Were we deciding this matter <u>de</u> <u>novo,</u> our findings and conclusions may well

have been different than those it made.  But we are not the decisionmaker, and we cannot

say that its decision, when deferred to in light of its responsibility and experience, fails

the substantial evidence inquiry that we are obliged to make.

For the reasons set forth above, we will grant the Board's petition for enforcement.

---

the executive branch in the first instance.  <u>See</u> <u>ABF Freight Sys.,</u> 510 U.S. at 325; <u>cf.</u> <u>id.</u>
at 326-31 (Scalia, J., concurring).